IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEPHANIE WATSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> WELLS FARGO BANK, N.A. and ) <br> WELLS FARGO HOME MORTGAGE, ) <br> ) <br> Defendants. ) | No. 12 CV 8578 <br><br> Hon. Charles R. Norgle |

## ORDER

Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss Plaintiff's Complaint [22] is granted. Defendant's Motion to Strike Plaintiff's Amended Complaint and Motion for Class Certification [27] is granted. Accordingly, Plaintiff's Motion for Class Certification [9] is stricken. In addition, Plaintiff's Motion for Consolidation [33] is denied and Plaintiff's Motion for Leave to Amend Complaint [39] is denied.

## STATEMENT

Before the Court is Defendant Wells Fargo Bank, N.A. and its division Wells Fargo Home Mortgage's (collectively, "Wells Fargo") motion to dismiss Plaintiff Stephanie Watson's ("Watson") putative class action complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). For the following reasons, the motion is granted.

Watson's claims are based on two separate incidents. First, Watson alleges that in a telephone call an unidentified person who works for Wells Fargo told her to miss a monthly mortgage payment in order for it to be able to consider her application for a loan modification under the Home Affordable Modification Program ("HAMP"); and as a result of that instruction, Watson skipped her November 2010 mortgage payment which resulted in late fees, penalties, and negative reporting to credit agencies. Second, Watson alleges that in January of 2011, Wells Fargo failed to pay her interest on her insufficient mortgage payment that was held for twenty-one days in an unapplied account until the full payment was received. On October 25, 2012, Watson filed a seven-count putative class action complaint against Wells Fargo alleging: (1) fraudulent/intentional misrepresentation; (2) negligent misrepresentation; (3) two counts of unjust enrichment; (4) violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 505/1, *et seq.*; (5) violation of the Illinois Residential Mortgage License Act of 1987, 205 Ill. Comp. Stat. 635/1, *et seq.*; and (6) breach of mortgage contract. Notably, Watson did not file a contemporaneous motion for class certification.

On November 16, 2012, Wells Fargo argues that it tendered an offer of full relief to Watson—in the amount of $10,000—thereby mooting her claims and depriving this Court of jurisdiction. Watson denies that Wells Fargo tendered her full relief, and three days later, on

November 19, 2012, she filed an amended complaint and a motion for class certification, adding an additional plaintiff, Lori L. Quist ("Quist").[1] Now, Wells Fargo moves to dismiss Watson's complaint for lack of jurisdiction as of November 16, 2012, when it allegedly tendered an offer of full relief, and moves to strike the amended complaint and the motion for class certification, which were filed after the Court was allegedly divested of jurisdiction.

"The doctrine of mootness stems from Article III of the Constitution, which limits the jurisdiction of federal courts to live cases or controversies." Damasco v. Clearwire Corp., 662 F.3d 891, 894 (7th Cir. 2011) (citations omitted). "A case is moot when there is no live controversy between the parties on the merits of the underlying claim." Breneisen v. Motorola, Inc., 656 F.3d 701, 706 (7th Cir. 2011). "Therefore, '[o]nce the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge this loses outright, under [Rule] 12(b)(1), because he has no remaining stake.'" Damasco, 662 F.3d at 895 (quoting Rand v. Monsanto Co., 926 F.2d 596, 598 (7th Cir. 1991)).

According to Watson's complaint, she seeks fees, penalties, and interest charged to her as a result of her missed mortgage payment—totaling $365.39—and compensation for damage to her credit score based on the allegation that someone from Wells Fargo told her to miss the mortgage payment. Watson also demands any interest that accrued on her partial mortgage payment for the twenty-one days that Wells Fargo allegedly held the money—which totals $11.52 when calculated at a 10% interest rate. Additionally, Watson seeks punitive damages where applicable and attorneys' fees. On November 16, 2012, Wells Fargo made the following tender to Watson:

> By this correspondence, on behalf of my client, [Wells Fargo], tender is hereby made to your client, Stephanie Watson, in an amount of $10,000.00. This tender is payable to Ms. Watson for all relief sought in her Complaint, including (i) all fees and penalties charged to Ms. Watson's account from November 2010 to present; (ii) any additional interest paid by Ms. Watson as a result of her November missed payment; (iii) 21 days of interest at a rate of 10 percent, on the $2,002.63 of Ms. Watson's funds that were purportedly held as unapplied in January 2011; (iv) all interest on the amounts noted in (i), (ii), and (iii) . . . and (v) an additional lump sum to cover attorneys' fees, costs, and punitive damages. To the extent that the foregoing tender amount does not cover Ms. Watson's reasonable attorneys' fees and costs to date, Wells Fargo alternatively tenders such reasonable fees and costs in an amount to be determined by the Court.
>
> In addition to the foregoing, Wells Fargo will remove any negative credit reporting that resulted from Ms. Watson's missed payment in November 2010, as alleged in the Complaint.

Decl. of Kenneth E. Rechtoris in Supp. of Wells Fargo Bank, N.A.'s Mot. to Dismiss Pl.'s Compl. Ex. 1. Because Wells Fargo, through its tender, has proffered evidence calling Watson's standing into question, Watson "bears the burden of coming forward with competent proof that

---

[1] The Court notes that Quist filed an identical "placeholder suit pending the resolution of the mootness issue" in the instant action on November 27, 2012 which is also before this Court based on relatedness. Pls.' Consolidated Reply in Further Supp. of Their Mot. for Leave to Am. Compl. ¶ 2; see Quist v. Wells Fargo Bank, N.A., No. 12 CV 9433 (N.D. Ill. filed Nov. 27, 2012).

standing exists." Apex Digital, Inc. v. Sears, Roebuck & Co., 572 F.3d 440, 444 (7th Cir. 2009) (citations omitted).

First, Watson argues that Wells Fargo's tender does not satisfy her entire demand because it does not take into account the higher interest rate that she was allegedly forced to pay for a loan modification in December of 2012 as a result of her damaged credit score. Specifically, she argues that she received an interest rate of 4.25% on her loan modification in December of 2012, which was 0.75% higher than Wells Fargo's published refinance rate of 3.5% as of January of 2013. As an initial matter, both parties agree that in this circuit, courts have held that "a plaintiff cannot state a claim for damages merely by alleging damage to their credit rating. Rather, a plaintiff must allege that [s]he suffered actual damages flowing from the alleged decrease in credit score such as that [s]he was denied credit, lost credit, had [her] credit limits lowered, or was required to pay a higher interest rate for credit." Reeder v. HSBC USA, Inc., No. 09 CV 2043, 2009 WL 4788488, at *13 (N.D. Ill. Dec. 8, 2009) (internal quotation marks and citation omitted). "At a minimum, a plaintiff must allege that the false information in their credit report was communicated to and used by a third party." Id. (internal quotation marks and citation omitted). Wells Fargo contends that Watson cannot meet her burden to show actual damages flowing from her allegedly damaged credit score, such that would render its offer of tender incomplete. The Court agrees. First, Watson received a locked-in interest rate of 4.25% for her Freddie Mac FIX30 HARP loan in April of 2012. At that time, Watson's rate was approximately .2% lower than the average interest rate on a HARP loan of 4.432%. Because she actually received a lower than average interest rate, Watson fails to show that she suffered any actual damages from her credit score in applying for her loan modification. In addition, Watson did not complete her loan modification until December of 2012, which was after Wells Fargo made its offer of tender. Therefore, even if Watson suffered actual damages from a higher interest rate in December of 2012, it would be irrelevant to the offer of tender that was made on November 16, 2012. Because Watson fails to put forth competent proof that she suffered actual damages from her lowered credit score, she is unable to show that Wells Fargo's tender was insufficient for failure to include damages related to her credit score. In any event, in its tender, Wells Fargo offered to remove any negative credit reporting which may have resulted from Watson's missed mortgage payment in November of 2010.

Next, Watson argues that the $10,000 tender is insufficient because it is plausible that she could recover in excess of that amount in punitive damages at trial. While the tender is more than 26 times the amount of Watson's claimed actual damages ($376.91), she argues that she could recover as much as 37.2 times the amount of her actual damages based on Mathias v. Accor Economy Lodging, Inc.. 347 F.3d 672, 674 (7th Cir. 2003) (upholding jury award where the jury "awarded each plaintiff $186,000 in punitive damages though only $5,000 in compensatory damages," a ratio of approximately 37.2:1). Watson further argues that "a higher multiple [of punitive damages] is permissible when the expected award of compensatory damages is so small that it would be unlikely to induce a suit even of compelling legal merit, especially if there are multiple victims and an indication that the tortfeasor has been eluding liability successfully." Gavin v. AT&T Corp., 464 F.3d 634, 641 (7th Cir. 2006) (citation omitted). Here, however, there are not multiple victims because a class has never been certified, or even motioned before the Court, with respect to the initial complaint at issue. In addition, there is no indication or allegation that Wells Fargo has been eluding liability. Furthermore, the facts in Mathias leading to the large award of punitive damages are inapposite to the facts here. Mathias involved a defendant that knowingly exposed its hotel customers to bites from a bed bug

infestation. The court in <u>Mathias</u> also noted that "the deliberate exposure of hotel guests to the health risks created by insect infestations exposes the hotel's owner to sanctions under Illinois and Chicago law that in the aggregate are comparable in severity to that of the punitive damage award in this case." <u>Mathias</u>, 374 F.3d at 678. Here, Watson does not point to any sanctions applicable to Wells Fargo's alleged infractions. Watson merely alleges that Wells Fargo charged her fees and penalties after allegedly instructing her to miss a payment, and failed to pay her interest for twenty-one days on an insufficient payment. The facts as alleged do not support a punitive damage award in excess of 26 times Watson's actual damages. Accordingly, Wells Fargo's tender of $10,000 was sufficient to satisfy all of Watson's claims.

Lastly, Watson claims that even if the Court finds that Wells Fargo's tender satisfied Watson's demand, it did not make a similar tender to Quist, and therefore her claims are not moot and the Court retains jurisdiction over this action. The Court rejects this argument. This case became moot on November 16, 2012 when Wells Fargo tendered relief in full satisfaction of Watson's complaint. Accordingly, this Court lost jurisdiction over the case as of that date and any actions taken after that date, including the amended complaint adding Quist as a plaintiff, are irrelevant. As a result, Wells Fargo's motion to strike Watson's Amended Complaint and motion for class certification is granted. In addition, Watson's motion for consolidation and motion for leave to amend the complaint are denied.

For the foregoing reasons, Wells Fargo's motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1) is granted.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: August 7, 2013